**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ROGER FRANCIS CARUTHERS,        )
                                )
                  Petitioner,   )
                                )        1:19CV389
              v.                )        1:16CR366-1
                                )
UNITED STATES OF AMERICA,       )
                                )
                  Respondent.   )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 43).[1]  For the reasons that follow, the Court should deny in part and should dismiss in part the Section 2255 Motion.

INTRODUCTION

This Court (per then-Chief United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 168 months upon his guilty plea to receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). (Docket Entry 32; see also Docket Entry 1 (Indictment); Docket Entry 15 (Plea Agt.); Docket Entry 16 (Factual

---

[1] Parenthetical citations refer to Petitioner's criminal case. Pin citations to the Section 2255 Motion refer to the page number(s) in the footer appended thereto upon docketing in the CM/ECF system (not the pre-printed number that appears in the upper right corner of the form pages of the Section 2255 Motion).

Basis); Docket Entry 38 (Plea Hrg. Tr.); Docket Entry 39 (Sent'g Hrg. Tr.).) Petitioner gave Notice of Appeal (Docket Entry 34), but (on December 21, 2017) the United States Court of Appeals for the Fourth Circuit affirmed, United States v. Caruthers, 706 F. App'x 802 (4th Cir. 2017). Petitioner did not seek review by the United States Supreme Court. (See Docket Entry 43 at 2.)

On April 10, 2019, the Clerk docketed the Section 2255 Motion (see id. at 1), which, according to Petitioner's "declar[ation] . . . under penalty of perjury . . .[,] was placed in the prison mailing system on March 21, 2019" (id. at 12 (fill-in-the-blank line omitted)). The Section 2255 Motion asserts five grounds for relief, each of which alleges ineffective assistance of counsel. (See id. at 13-17.) The United States both moved to dismiss the Section 2255 Motion as untimely and responded in opposition on the merits (Docket Entry 47 ("Response Motion")), attaching thereto an affidavit from Petitioner's counsel (Docket Entry 47-1). Petitioner timely filed a "Reply to Government's Motion to Dismiss and Response to § 2255" (Docket Entry 51 ("First Reply") at 1 (all-caps font omitted); see also Text Order dated Oct. 22, 2019 (extending Petitioner's "response/reply" deadline to Oct. 31, 2019); Docket Entry 51 at 10 (dating First Reply as signed and delivered to prison officials for mailing on October 30, 2019)) and (more than a year later) filed an unauthorized, additional "Reply to Government's Response in Opposition to Motion under § 2255"

2

(Docket Entry 53 ("Second Reply") at 1 (all-caps font omitted); see also id. at 10 (dating Second Reply as signed and "served upon the Court" on February 11, 2021); Docket Entries dated Oct. 22, 2019, to present (reflecting no authorization for Second Reply)).[2]

## DISCUSSION

Per the Response Motion, "Petitioner's one-year window for submitting a [motion pursuant to] 28 U.S.C. § 2255 closed on March 22, 2019." (Docket Entry 47 at 2; see also id. ("Petitioner did not file a petition of certiorari with the Supreme Court. His time to do so expired on March 21, 2018, 90 days after the Fourth Circuit issued its opinion. *See* Rule 13.1, Rules of the Supreme Court.").) As noted above, the Section 2255 Motion contains a verification of its placement in the prison mailing system on March 21, 2019, and the date of such submission counts as the filing date, see Rule 3(d), Rules Governing Section 2255 Proceedings. The Response Motion nonetheless contends that the Section 2255 motion "was mailed via certified mail after March 21, 2019 and is thus untimely." (Docket Entry 47 at 3.) To support that contention, the Response Motion relies on (A) United States Postal Service ("USPS") website tracking information corresponding to the

---

[2] Petitioner did not verify the Second Reply (see Docket Entry 53 at 10), and thus cannot rely on any factual assertions therein as evidence, see, e.g., Wright v. United States, Nos. 3:04CR3, 3:10CV174, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished) ("[T]he unsworn allegations of [a petitioner's] reply are not an acceptable form of evidence . . . ."), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished).

certified mail number on the envelope that conveyed the Section 2255 Motion, which "reveals that USPS took possession of the mailing on April 5, 2019" (id. at 3 n.2), and (B) the statement of counsel for the United States that, "[b]y telephonic consultation with [said counsel], a Bureau of Prisons representative confirmed that this package was deposited in the institution's outgoing mail on April 4, 2019" (id.; see also id. ("Outgoing Bureau of Prison mail is provided to the [USPS] on the next weekday following its deposit in the institution's outgoing mail . . . .")).

The Court should deem that proffer insufficient to justify dismissal of the Section 2255 Motion as untimely because, assuming the Court may take judicial notice of USPS website tracking information (and thus may find that the "USPS took possession of the mailing [containing the Section 2255 Motion] on April 5, 2019" (id.)), "[s]tatements of counsel in a brief are not evidence," Votaw v. Carthens, No. 1:21CV354, 2021 WL 3773409, at *1 (M.D.N.C. Aug. 25, 2021) (unpublished) (Eagles, J.), and therefore the Court lacks an adequate basis to find either that "th[e] package [containing the Section 2255 Motion] was deposited in the institution's outgoing mail on April 4, 2019" (Docket Entry 47 at 3 n.2) or that "[o]utgoing Bureau of Prisons mail is provided to the [USPS] on the next weekday following its deposit in the institution's outgoing mail" (id.). Accordingly, the United States has not refuted, as a matter of law, Petitioner's verified

4

declaration that the Section 2255 Motion "was placed in the prison mailing system on March 21, 2019" (Docket Entry 43 at 12 (fill-in-the-blank line omitted)).[3]

Turning to the merits of the Section 2255 Motion's ineffective assistance claims, Petitioner (to prevail) must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also id. ("[T]he standard for judging counsel's representation is a most deferential one."); Strickland, 466 U.S. at 694 (defining prejudice

---

[3] The Response Motion notes that "[a]ttached to [the Section] 2255 [Motion] is a letter dated April 4, 2019 in which Petitioner asserts that he mailed a 'first' copy [of the Section 2255 Motion] on March 21, 2019 via priority mail." (Docket Entry 47 at 3 (citing Docket Entry 43 at 18); see also Docket Entry 43 at 1 (bearing tracking number different from certified mail number on envelope used to convey Section 2255 Motion), 18 ("The first [copy of the Section 2255 Motion] was mailed on March 21, 2019, sent priority mail with [the] tracking number . . . which appears at the top of the first page of the [Section 2255 M]otion.").) The United States has conceded that the Bureau of Prisons "does not keep an internal record of priority mail." (Docket Entry 47 at 3 n.3.) Further, although (according to the Response Motion) USPS website tracking information "reveals that USPS took possession of th[at priority] mailing on April 8, 2019" (id.), as stated above, the United States has not produced competent evidence that "[o]utgoing Bureau of Prisons mail is provided to the [USPS] on the next weekday following its deposit in the institution's outgoing mail" (id. at 3 n.2). As a result, the Court again lacks an adequate basis to reject Petitioner's verification that the Section 2255 Motion "was placed in the prison mailing system on March 21, 2019" (Docket Entry 43 at 12 (fill-in-the-blank line omitted)).

as "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Petitioner has not established any such unreasonable performance or resulting prejudice as to any claim in the Section 2255 Motion.

<u>Ground One</u>

As his first ground for relief, Petitioner has alleged that his counsel "was ineffective during the plea [b]argaining [s]tage of the proceedings" (Docket Entry 43 at 13), because he "failed to move for suppression of evidence that was collected during [Petitioner's] questioning by FBI agents at his home while they were executing a search warrant" (<u>id.</u>). When (as in this case),

> a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may <u>only</u> attack the <u>voluntary</u> and <u>intelligent</u> character of the guilty plea . . . .

<u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) (emphasis added); <u>see also</u> <u>id.</u> ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process."). A defendant pleads guilty voluntarily when he possesses "aware[ness] of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . [, and received no] induce[ment] by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . .

6

promises that are by their nature improper . . . (e.g. bribes)."
Brady v. United States, 397 U.S. 742, 755 (1970) (internal
quotation marks omitted). To make an intelligent guilty plea, a
defendant must enjoy "control of his mental faculties" and must
know "the nature of the charge against him." Id. at 756. "A
guilty plea, voluntarily and intelligently entered, may not be
vacated because the defendant was not advised of every conceivable
constitutional plea in abatement he might have to the charge
. . . ." Tollett, 411 U.S. at 267; see also United States v.
Broce, 488 U.S. 563, 572 (1989) ("[A] counseled defendant may not
make a collateral attack on a guilty plea on the allegation that he
misjudged the admissibility of [evidence]."); Thomas v. United
States, Nos. 5:15CR138, 5:16CV819, 2019 WL 2617062, at *3 (E.D.N.C.
June 26, 2019) (unpublished) ("The fact that counsel . . . failed
to file a motion to suppress . . . does not implicate the
voluntariness of the petitioner's plea.").

Given that legal landscape and the record's conclusive showing
that Petitioner pleaded guilty intelligently and voluntarily (see
Docket Entry 38 at 3-16 (documenting that, after swearing to tell
the truth, Petitioner – then a "[f]ifty-two" year old man, who had
completed "[t]wo years of college" (id. at 3) – entered an
intelligent and voluntary guilty plea as defined by Brady, pursuant
to a written Plea Agreement which he fully understood, just as

7

Judge Osteen found at that time)),[4] Ground One falls short under

_Tollett_. _See, e.g._, _Maldonado v. Campbell_, No. 20-1345, 2020 WL

6194595, at *2 (6th Cir. Aug. 17, 2020) (unpublished) ("[The

petitioner] also argues that his attorney rendered ineffective

assistance by not filing a motion to suppress . . . . However, his

no-contest plea waive[d] consideration of th[at] claim[]." (citing

_Tollett_)); _United States v. Austin_, No. 96-6121, 87 F.3d 1309

(table), 1996 WL 295278, at *1 (4th Cir. June 5, 1996)

(unpublished) ("Appellant raised [a] claim[] in his habeas motion[]

that his counsel was ineffective for . . . failing to move for

suppression of evidence . . . . [Those] allegations state [a] non-

jurisdictional claim[] antecedent to the guilty plea. [That claim

was] waived by the guilty plea." (citing _Tollett_)); _Yang v. United

States_, Nos. 1:16CR140, 1:17CV959, 2021 WL 1227756, at *5 (M.D.N.C.

---

[4] "[Such] findings made by the judge accepting the plea[] constitute a formidable barrier in any subsequent collateral proceedings." _Blackledge v. Allison_, 431 U.S. 63, 74 (1977). Coordinately, "[Petitioner's] solemn declarations in open court affirming [his P]lea [A]greement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." _United States v. Lemaster_, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss any [collateral claim] that necessarily relies on allegations that contradict [Petitioner's] sworn statements." _Id._ at 221-22. Petitioner has proved no extraordinary circumstances of that sort. (_See_ Docket Entry 43 at 13 (offering no challenge to voluntariness or intelligence of guilty plea in discussing Ground One); Docket Entry 51 at 2-3 (same); _see also_ Docket Entry 53 at 1-10 (omitting any discussion of Ground One and/or voluntariness/intelligence of guilty plea).)

Feb. 23, 2021) (unpublished) ("[The p]etitioner's guilty plea bars a collateral attack grounded in his counsel's failure to advise him about and litigate the potential suppression issue." (citing Tollett)), recommendation adopted, 2021 WL 1227059 (M.D.N.C. Mar. 31, 2021) (unpublished) (Schroeder, C.J.); Hernandez-Rodriguez v. United States, Nos. 1:17CR157, 1:18CV4800, 2020 WL 1673009, at *2 (N.D. Ga. Apr. 6, 2020) (unpublished) ("[T]he movant does not challenge the voluntariness of his plea. Rather, he challenges his counsel's . . . failure to move to suppress [] evidence . . . . Th[at is] not [a] claim[] he can raise in this post-conviction motion." (citing Tollett)); Bryant v. United States, Nos. 4:18CR437, 4:19CV2692, 2020 WL 869965, at *3 (D.S.C. Feb. 21, 2020) (unpublished) (holding that "claim [for] counsel fail[ing] to file a motion to suppress . . . is barred by *Tollett*"), appeal dismissed, 826 F. App'x 291 (4th Cir. 2020); United States v. Bolt, Nos. 5:13CR50085, 5:14CV50001, 2018 WL 3016509, at *3 (W.D. Ark. June 15, 2018) (unpublished) ("[The petitioner's] plea was knowing and voluntary and therefore waived any complaint of ineffective assistance based on [his] counsel's failure to file a motion to suppress." (citing Tollett)); Fuller v. United States, Nos. 5:15CR16, 5:16CV273, 2017 WL 1378109, at *3 (E.D.N.C. Apr. 12, 2017) (unpublished) ("[The petitioner's] ineffective-assistance claim for failing to file a motion to suppress . . . fails because he pleaded guilty." (citing Tollett)); Matthew v. United States,

9

Nos. 3:06CR16, 3:13CV111, 2015 WL 13573975, at *3 (W.D.N.C. Oct. 8, 2015) (unpublished) ("[B]y entering a knowing and voluntary guilty plea, [the p]etitioner waived his right to argue that his attorney was ineffective in failing to file a motion to suppress." (citing Tollett)), appeal dismissed, 635 F. App'x 104 (4th Cir. 2016); Hawk v. United States, Nos. 1:08CR413, 1:12CV361, 2015 WL 13567551, at *1-2 (M.D.N.C. May 27, 2015) (unpublished) (Webster, M.J.) (citing Tollett in opining that the petitioner "may not raise" claims "alleg[ing] ineffective assistance of counsel as it relates to counsel's failure to request a suppression hearing," given "valid guilty plea"), recommendation adopted, 2015 WL 13567416 (M.D.N.C. June 30, 2015) (unpublished) (Beaty, S.J.); Brown v. United States, Nos. 3:08CR259, 3:11CV99, 2012 WL 5265798, at *10 (S.D.W. Va. Aug. 17, 2012) (unpublished) ("[The petitioner's] claim of ineffective assistance based on counsel's failure to file a motion to suppress is clearly premised on an alleged constitutional violation that occurred prior to his guilty plea and was unrelated to it. Consequently, [that] claim is foreclosed from review."), recommendation adopted, 2012 WL 5265915 (S.D.W. Va. Oct. 24, 2012) (unpublished); contra Mahrt v. Beard, 849 F.3d 1164, 1171 (9th Cir. 2017) ("conclud[ing] that [suppression-related] ineffective assistance of counsel claim is allowed under *Tollett*"); United States v. Ferrel, Nos. 07CR283, 11CV1842, 2014 WL 12769045, at *3 (D. Colo. Feb. 3, 2014) (unpublished) (same).

Alternatively, Ground One fails as a matter of law, because Petitioner cannot show (A) that his counsel acted unreasonably by opting not to file a suppression motion, and/or (B) "that there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985). In that regard, Ground One offers these "Supporting Facts" (Docket Entry 43 at 13):

1) "[Petitioner] and [his wife] were separated and taken to separate parts of their home" (id.);

2) "[Petitioner] was 'held' in his pajamas with no shirt while FBI agents questioned him about his behavior in the living room" (id.; see also Docket Entry 51 at 2 (stating that four law enforcement officers "made sure that [Petitioner] stayed with them in the kitchen")); and

3) "[Petitioner] told [his counsel] that [Petitioner] was not read his rights before they began the questions" (Docket Entry 43 at 13; see also Docket Entry 51 at 2 ("[Petitioner] was never read his Miranda rights, nor did he waive them.")).

Those factual allegations do not satisfy the custody requirement for a Miranda-based suppression motion. See, e.g., United States v. Cottman, 807 F. App'x 204, 213-14 (4th Cir. 2020) (rejecting argument that officers executing search warrant conducted custodial interrogation where "questioning took place in the home[ while the defendant was] separated from family members"

and observing that other "cases in which encounters were found to be noncustodial" included circumstances involving "10 to 15 officers executing a search warrant on [the defendant's] residence shortly after 6:00 a.m.," with "some officers ha[ving] firearms drawn during the initial entry while [the defendant] was in his pajamas when questioned," and "[the defendant] testified that officers banged on the front door, an officer blocked the entrance to the kitchen while [the defendant] was being questioned, and . . . an officer pointed 'what looked like an M-16' right at [the defendant]"); United States v. Beard, 119 F. App'x 462, 466-67 (4th Cir. 2005) ("[The defendant] was not handcuffed or otherwise restrained. In addition, there is no evidence that the officers drew their weapons in [his] presence or were antagonistic toward him. [The defendant] was in his own house . . . and was never told that he was not free to leave. . . . Under these circumstances, we cannot conclude that a reasonable man in [his] position would have believed his freedom of action was restrained to a 'degree associated with formal arrest.'" (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983))).

"[B]ecause it would have been futile to file a motion to suppress, counsel was not objectively unreasonable in declining to file one, nor was [the p]etitioner prejudiced as a result." Lowe v. United States, Nos. 1:07CR71-2, 1:12CV1344, 2015 WL 13548371, at *2 (M.D.N.C. Nov. 23, 2015) (unpublished) (Webster, M.J.),

12

recommendation adopted, 2016 WL 9459828 (M.D.N.C. Jan. 5, 2016) (unpublished) (Beaty, S.J.).  Furthermore, Ground One does not identify the specific statements Petitioner made in response to questioning, much less explain how the suppression of those statements reasonably would have impacted his decision to plead guilty.  (See Docket Entry 43 at 13 (indicating that Petitioner did not "know what he said while in a state of shock"); see also Docket Entry 51 at 2 (failing to specify statements allegedly subject to suppression or to voice intent to forego guilty plea and instead only ambiguously alleging that "comprehensive suppression hearing would have allowed some part of the evidence to be suppressed").)[5]

Additionally, Petitioner's counsel has countered Ground One's (insufficient) ineffectiveness allegations about suppression-motion matters with the following sworn statement:  "I did not identify any viable issue supporting a motion to suppress any statement. [Petitioner] and I discussed the circumstances of his arrest.  We

_____

[5] Moreover, to the extent Ground One (vaguely) refers to Petitioner's statements (see Docket Entry 43 at 13 ("[Petitioner] 'spilled his guts' to the questioning agents in a very remorseful state.  He even verbally, repetitively thanked them for being there, for coming to essentially stop the craziness.")), it intimates not that he wanted to suppress those statements and to proceed to trial, but rather that he believed they supported his remorse-based request for leniency at sentencing (see id. ("[Petitioner] deserves acknowledgment from this [C]ourt and to be able to bring testimony regarding his remorse and relief that he was caught from the interviewing FBI agents. . . . Perhaps the [C]ourt would . . . allow the evidence of [Petitioner's] serious 'Thank you for coming here; now this will stop' attitude and his obvious sense of finality and relief to be presented by the FBI witnesses at the scene." (stray period omitted))).

13

decided together that emphasizing his complete cooperation from the outset of the investigation as mitigation was a better strategy than filing a motion to suppress, which would almost certainly be denied."  (Docket Entry 47-1 at 2.)[6]

---

[6] Consistent with the above-quoted averment by Petitioner's counsel, Petitioner (at the plea hearing) swore that he and his counsel "fully discussed th[e] charges and the case in general" (Docket Entry 38 at 4), as well as "any possible defenses" (id.), and that he remained "fully satisfied with the services of [his] attorney and his counsel, representation, and advice" (id. at 5). (See id. at 4-5.)  The First Reply likewise admits that Petitioner's counsel "discussed the suppression [issue] with [Petitioner, but grouses that Petitioner's counsel] did not make [Petitioner] aware of the implications of not moving for suppression when the time to consider an appeal came." (Docket Entry 51 at 2.)  As noted above, however, the First Reply (like the Section 2255 Motion) does not allege (even in conclusory fashion) that Petitioner wanted to proceed to trial, as required to preserve this (non-dispositive) suppression issue for appeal, see, e.g., United States v. Jefferies, 728 F. App'x 226, 226-27 (4th Cir. 2018) ("[The defendant] first argues that the district court improperly denied his motion to suppress statements he made to investigators . . . .  He claims that he made the statements without having received Miranda warnings. . . .  In light of the [defendant's] valid plea, . . . we conclude that [he] has waived his right to challenge the propriety of the district court's ruling on the suppression motion."); see also United States v. Bundy, 392 F.3d 641, 647 (4th Cir. 2004) ("[A] valid conditional guilty plea preserves for appellate review only case-dispositive pretrial issues.").  Further, as well-expressed (and well-supported with record citations) by the United States:

Nor could [Petitioner] rationally [show he would have insisted on going to trial] given the weight of the other evidence against him. His statement aside, the evidence against Petitioner was very strong.  FBI agents located multiple child pornography files on three of Petitioner's devices, including his phone.  A backup of Petitioner's phone saved on his computer revealed a child pornography video in a folder labeled "download".  Examination of Petitioner's phone revealed a Kik Messenger account that had been used to send and/or receive child pornography.

(continued...)

14

"'[T]he decision whether to file a pre-trial motion to suppress is a classic tactical decision.'" Lowe, 2015 WL 13548371, at *2 (internal ellipsis omitted) (quoting Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)). "Obviously, this tactical decision made by [Petitioner's] counsel cannot be second-guessed by this [C]ourt and, therefore, [Petitioner's] counsel w[as] not constitutionally ineffective . . . ." Sexton, 163 F.3d at 887; see also Clozza v. Murray, 913 F.2d 1092, 1100 (4th Cir. 1990) ("[Courts] cannot, in keeping with *Strickland*, second-guess counsel's tactical choices."); United States v. Williams, Nos. 1:12CR215, 1:14CV577, 2014 WL 5810922, at *5 (E.D. Va. Nov. 7, 2014) (unpublished) ("It was . . . a prudent tactical decision for counsel not to have wasted his or the [c]ourt's time filing a suppression motion doomed to fail.").[7]

_____

[6](...continued)
The user profile associated with the Kik Messenger account displayed a profile picture of Petitioner and the name "Roger C". Further, evidence from two previous law enforcement investigations identified Petitioner as an individual who possessed child pornography.

(Docket Entry 47 at 9 (internal citations omitted) (citing Docket Entry 16 at 5-6 and Docket Entry 27, ¶¶ 5, 8, 13, 14, 54, 55); see also Docket Entry 53 at 3 (admitting that "[Petitioner] is guilty of possession of child pornography").)

[7] Contrary to the First Reply's assertion that Petitioner's counsel could act solely as a legal researcher and could "not mak[e] critical decisions for [Petitioner]" (Docket Entry 51 at 2), "[t]he adversary process could not function effectively if every tactical decision required client approval," Taylor v. Illinois, 484 U.S. 400, 418 (1988). Indeed, the statute – (mis)cited in the
(continued...)

For all of these reasons, the Court should deny relief on Ground One.

Ground Two

The Section 2255 Motion's second ground asserts that "[Petitioner's] counsel [] was ineffective when he failed to act on his client's behalf during the [s]entencing [s]tage of the proceedings. He should have objected or asked for a continuance if unprepared." (Docket Entry 43 at 14.) In particular, Ground Two alleges that Petitioner's counsel (A) "erred when he did not ask for a continuance in the sentencing hearing at the time the government presented a new and unexpected witness . . .[, FBI Task Force Officer ("TFO")] Kevin Norman" (id. (internal quotation mark omitted)), and (B) should have "object[ed] to the erroneous statements and false assumptions on the part of the [C]ourt [about Petitioner's relocation(s) from Maine to Kentucky to North

---

[7](...continued)
First Reply as supporting the view that Petitioner's counsel retained no discretion over the filing of motions (see Docket Entry 51 at 2) – actually states that "parties may plead and conduct their own cases personally or by counsel as . . . are permitted to manage and conduct causes," 28 U.S.C. § 1654 (emphasis added). In other words, if Petitioner wanted to remain "the one in charge of his case" (Docket Entry 51 at 2), he could have elected to "plead and conduct [his] own case[] personally," 28 U.S.C. § 1654; however, by opting for representation by a professional, Petitioner ceded to his counsel the authority "to manage and conduct [the] cause[]," 28 U.S.C. § 1654, with only a few exceptions, see Taylor, 484 U.S. at 417-18 & n.24 (giving these examples of "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client": "right to plead not guilty and to have a trial," "right to a jury trial," and "right to be present during trial" (internal brackets omitted)).

16

Carolina] and should have moved to correct the record" (id.). Those allegations provide no basis for collateral relief.

Beginning with Ground Two's continuance sub-claim (and borrowing the apt words of the United States), "[a]s a threshold matter, TFO Norman was not a new and unexpected witness. As [Petitioner's counsel] state[d] in his affidavit, '[TFO Norman] was the lead agent from the beginning of the case.'" (Docket Entry 47 at 13 (quoting Docket Entry 47-1 at 2); see also id. ("TFO Norman is referenced multiple times in the [F]actual [B]asis . . . ." (citing Docket Entry 16 at 1-4)).) Even more significantly, although Ground Two posits that, "[a]s a direct result of being caught off guard, [Petitioner's counsel] had no time to prepare for cross-examination[ and] thus this testimony was not subjected to adversarial testing" (Docket Entry 43 at 14), (again) as properly pointed out by the United States:

> Petitioner does not specify what topics [his counsel] should have explored on cross-examination or how additional time would have been of assistance. Nor does Petitioner specify how cross-examination of TFO Norman would have led to a more lenient sentence. An experienced attorney knows that, for many reasons, the best strategy is sometimes not to ask a witness any questions. [Petitioner's counsel] is a very experienced attorney. [(See Docket Entry 47-1 at 1.)]
>
> "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis." *Cano v. United States*, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.), *recommendation adopted*, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).

17

(Docket Entry 47 at 14 (one internal citation omitted); see also Docket Entry 43 at 14 (vaguely alluding to "many questions that needed to be asked of [TFO] Norman" and "involve[ment of] a forensic IT specialist"); Docket Entry 51 at 4-5 (purporting to address sub-claim that "[Petitioner's c]ounsel [s]hould have [r]equested that the [s]entencing [h]earing be [c]ontinued to [p]repare [c]ross-[e]xamination," but only generally advocating for "further questions about this adult-only, role-playing website").)[8]

---

[8] Rather than highlight cross-examination questions for TFO Norman which Petitioner's counsel supposedly would (and should) have developed if he had requested a continuance of the sentencing hearing, the First Reply's discussion (nominally) directed at the first sub-claim of Ground Two actually addresses the content of Ground Three. (Compare Docket Entry 43 at 15 (setting out Ground Three, including allegation that "[Petitioner's counsel] should have asked for a continuance in order that he could have his polygraph expert question [Petitioner with] questions that would establish his beliefs and mindset in these adult acting activities"), with Docket Entry 51 at 4-5 (discussing (under heading "Counsel Should have Requested that the Sentencing Hearing be Continued to Prepare Cross-Examination") (i) portion of affidavit of Petitioner's counsel responding to Ground Three, including polygraph- and online-role-playing-related issues, as well as (ii) Petitioner's colloquy with Judge Osteen about the latter matter (citing Docket Entry 47-1 at 2 and Docket Entry 39 at 37-39, respectively)).) The Second Reply finally endeavors to connect Ground Two's (cross-examination) continuance sub-claim and Ground Three's (polygraph/role-playing) continuance allegation by arguing that "[a]ll [Petitioner's] counsel [] had to do was ask one simple question: 'Was there any evidence that [Petitioner] knew the identity of the [putative minor with whom he interacted online]?'" (Docket Entry 53 at 7; see also id. at 8-9 (mistakenly describing counsel for United States as "lead investigator" whom Petitioner's counsel should have "depose[d] or investigate[d]" and "investigate[d ] or at the very least question[ed]").) As detailed in the Introduction, Petitioner did not obtain permission to file the Second Reply and the Court need not consider matters raised in such unauthorized filings. See, e.g., County of Chesterfield v.

(continued...)

The second sub-claim within Ground Two relies on the allegation that Petitioner's counsel should have clarified to the Court that "the moves by [Petitioner] and his fiance (now wife) from Maine to North Carolina, to Kentucky, and back to North Carolina were very positive." (Docket Entry 43 at 14; <u>see also</u> <u>id.</u> ("They both worked for the U.S. Veterans Administration and each move was either a progressive lateral assignment or a promotion for one or both of them.").) The record makes clear that Judge Osteen accepted that those relocations may not have related directly to Petitioner's offense conduct (<u>see</u> Docket Entry 39 at 25 ("May have all just been coincidence . . . .")), while focusing on the fact that, upon leaving Maine after "this conduct was originally

[8](...continued)
<u>Lane</u>, No. 3:18CV354, 2018 WL 6729800, at *1 n.3 (E.D. Va. Dec. 21, 2018) (unpublished) ("Because [the d]efendants did not seek leave of [c]ourt to file the [s]econd [r]eply, the [c]ourt will not consider it."). Even if the Court nevertheless considered the Second Reply's belated suggestion of a cross-examination question for TFO Norman and even if (as the Second Reply appears to assume) TFO Norman would have answered that question in the negative, Petitioner has not shown prejudice because he merely has speculated that such an answer would have netted him a lighter sentence, <u>see</u> <u>United States v. Basham</u>, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)). (<u>See</u> Docket Entry 53 at 7-9 (failing to show how cross-examination would result in lesser prison term).) In fact, emphasizing the lack of evidence of Petitioner's knowledge of the identity of the putative minor via cross-examination of TFO Norman reasonably would not have improved Petitioner's posture, as Judge Osteen acknowledged at sentencing that "[t]here's no evidence of [the putative minor's identity]" (Docket Entry 39 at 24), but remained concerned that, "other than some assumption [Petitioner] made, there's nothing here to suggest that [the putative minor wa]s an adult" (<u>id.</u> at 38).

19

discovered" (id.) and "divorc[ing] his [then-]wife . . . [because] he didn't want to risk causing [her] embarrassment" (id.), and relocating "to Kentucky[, Petitioner] still continued to participate in this conduct and then at some point move[d] . . . to North Carolina" (id.), where he "continue[d] to engage in this conduct" (id.). Judge Osteen deemed that course of events inconsistent with "the kind of remorse . . . seen in many cases where discovery of images and bringing this [conduct] to light causes an almost fatalistic thank-God-I-got-caught-I'm-tired-of-this attitude." (Id.; see also id. ("I see [Petitioner] to some degree continuing to make excuses for the conduct.").)

As illustrated by the United States, Petitioner's counsel reasonably reacted to Judge Osteen's comments on that front by "respond[ing] to the heart of the Court's concern, [i.e.] Petitioner's response to law enforcement intervention in Maine" (Docket Entry 47 at 16; see also id. (quoting Docket Entry 39 at 26-28)), including by emphasizing "that Petitioner sought treatment after being confronted by law enforcement" (id. at 17; see also Docket Entry 39 at 27-28 ("[Petitioner] did voluntarily participate in [a] treatment program. He had to do so at his own expense; and when he ran out of money, he unfortunately had to discontinue that. Had he been able to continue that treatment, we may not have been here. . . . Again, I do point out that he did seek that treatment. . . . [H]e did try to seek some help for it, and he

certainly is sincere about seeking help for it now.")). Simply put, "[Petitioner's] assertions as to what [his] counsel should have done . . . during his sentencing . . . do not establish a constitutional violation. [Petitioner's] counsel raised suitable arguments, made tactical decisions, . . . and performed admirably in light of the record." <u>Bradford v. United States</u>, Nos. CR05-85, C09-75, 2012 WL 1365735, at *2 (N.D. Iowa Apr. 19, 2012) (unpublished); <u>see also</u> <u>Jones v. United States</u>, Nos. 5:10CR228, 5:13CV414, 2016 WL 3951092, at *4 (E.D.N.C. July 20, 2016) (unpublished) ("Counsel's arguments at sentencing were tactical ones entitled to deference and fall comfortably within the wide range of professionally competent representation."); <u>Lopez-Merida v. United States</u>, Nos. 08CR1841, 13CV812, 2014 WL 12785136, at *6 (D.N.M. Oct. 17, 2014) (unpublished) ("Counsel had wide latitude to make tactical decisions throughout the proceedings — including which arguments to advance at the sentencing hearing.").[9]

Regardless, Petitioner cannot show prejudice, as (once more rightly recognized by the United States):

---

[9] Notably, in the midst of the previously quoted exchange between Judge Osteen and Petitioner's counsel, Petitioner interjected to give details about his prior treatment, but (like his counsel) chose not to shift the focus from that subject (which supported his remorse-based, mitigation theory) to the subject of motives for his cross-country moves. (<u>See</u> Docket Entry 39 at 27.) Similarly, during his later, lengthy colloquy with Judge Osteen, Petitioner never broached the latter subject (which Ground Two now attempts to paint as obviously critical). (<u>See</u> <u>id.</u> at 36-39.)

> the Court's explanation of its sentence addressed []
> Petitioner's attempt to seek treatment and his continued
> offending despite law enforcement intervention, but,
> significantly, not Petitioner's motivation for
> relocating. . . .
>
> . . . .
>
> . . . . Consequently, had [Petitioner's counsel] made
> the argument Petitioner claims he should have, there is
> nothing in the record to suggest that Petitioner's
> sentence would have been different.

(Docket Entry 47 at 17 (citing Docket Entry 39 at 41-42).)[10]

In sum, the Court should hold that both of Ground Two's ineffectiveness sub-claims lack merit.

### Ground Three

For its third ground, the Section 2255 Motion asserts that "[Petitioner's c]ounsel erred when he failed to ask his polygraph expert to question [Petitioner] about the nature of the internet sites that he visited and the participants' adult-actor status." (Docket Entry 43 at 15.) More specifically, Ground Three maintains

_____

[10] The First Reply baldly declares that the lack of clarification about the job-related rationale for Petitioner's relocations "certainly had adverse effects on [his] sentence" (Docket Entry 51 at 6), but, "to succeed on his ineffective assistance claims, [Petitioner] is not entitled to satisfy the prejudice requirement through rank speculation," United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) (internal quotation marks omitted). Lastly, the Second Reply states (without record support) that "[t]he government argued that [Petitioner] made a series of moves to somehow avoid detection" (Docket Entry 53 at 5), but the record refutes that unsupported statement (see Docket Entry 30 at 1-13 (setting forth sentencing position of United States without commenting on moves by Petitioner); Docket Entry 39 at 33-36 (memorializing argument at sentencing by counsel for United States, which omits any reference to Petitioner's relocations)).

22

that "[Petitioner's counsel] should have asked for a continuance in order that he could have his polygraph expert question [Petitioner with] questions that would establish his <u>beliefs and mindset</u> in these adult acting activities." (<u>Id.</u> (emphasis added); <u>see also</u> Docket Entry 51 at 5 (insisting that Petitioner's counsel should have "demanded that the polygraph expert be allowed to explore [Petitioner's] state of mind and honestly-held beliefs").)

Petitioner, however, has not come forward with any facts sufficient to show that the polygraph expert <u>could</u> have obtained data "that would establish [Petitioner's] beliefs and mindset in [such] activities" (Docket Entry 43 at 15), let alone that any such data <u>would</u> have supported Petitioner's position at sentencing. (<u>See</u> <u>id.</u>; <u>see also</u> Docket Entry 51 at 4-5, 7 (discussing polygraph and/or role-playing issues, but offering no evidentiary showing about polygraph data).) "[Such u]nsupported, conclusory allegations do not warrant an evidentiary hearing, much less [habeas] relief." <u>Ward v. United States</u>, Nos. 1:10CR208, 1:13CV168, 2016 WL 1032847, at *4 (M.D.N.C. Mar. 15, 2016) (unpublished) (Osteen, C.J.) (citing <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992), <u>abrog'n on other grounds recog'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999)); <u>see also</u> <u>Davis v. Clarke</u>, No. 3:13CV119, 2014 WL 693536, at *4 (E.D. Va. Feb. 21, 2014) (unpublished) (ruling that, "[w]here a petitioner faults counsel for not calling a witness, the petitioner must provide

23

'concrete evidence of what the witness would have testified to in exculpation'" (internal brackets omitted) (quoting <u>United States v. Terry</u>, 366 F.3d 312, 316 (4th Cir. 2004))), <u>appeal dismissed</u>, 577 F. App'x 157 (4th Cir. 2014).[11]

In the alternative, Petitioner's counsel has averred that "[he] asked [the defense] polygraph expert whether it would be possible to test the truthfulness of [Petitioner's] consistent assertions (and testimony) that he was always role-playing and believed that those with whom he was interacting were also role-playing adults. [The] expert replied that testing [Petitioner's] mental state was not possible . . . ." (Docket Entry 47-1 at 2.) As a result, "[Petitioner's] counsel was not constitutionally

_____

[11] To the extent Ground Three shifts its focus <u>from</u> (i) the supposed need for a sentencing-hearing continuance to allow polygraph examination of Petitioner's beliefs about the age of online-chat-room participants <u>to</u> (ii) the supposed need for "a psychological analysis . . . regarding the behavior of [Petitioner] compared and contrasted with typical addictional [sic] behavior" (Docket Entry 43 at 15), it suffers from the same (fatal) lack of factual support (<u>see</u> <u>id.</u> (alleging in conclusory fashion that "[i]t has been shown in study after study that addiction chemistry in the brain most often overrides rational behavior" and that "[m]ost addicts cannot stop or help themselves," without identifying any such studies); <u>see also</u> Docket Entry 51 at 7 (purporting to address Ground Three, but making no mention of psychological evidence)). Further, Judge Osteen acknowledged the possibility that Petitioner's resumption of child-pornography activity after law enforcement officials in Maine confronted him about such conduct could fall "in the category of he just couldn't control himself, but [nonetheless noted the absence of] the kind of remorse in [Petitioner's] case that [Judge Osteen had] seen in many cases [involving] discovery of [such] images . . . ." (Docket Entry 39 at 25.) Petitioner has not shown how the psychological evidence to which he ambiguously adverted reasonably would have altered Judge Osteen's perspective in that regard. (<u>See</u> Docket Entry 43 at 15.)

24

ineffective in failing to [ask for a continuance for such purposes]

. . . because it would have been futile for [him] to have done so,"

<u>Oken v. Corcoran</u>, 220 F.3d 259, 269 (4th Cir. 2000).[12]

---

[12] The First Reply does not attempt to rebut the above-quoted averments by Petitioner's counsel about the infeasibility of polygraphing Petitioner about his mindset; rather, it seizes on his counsel's further averments that (A) the defense polygraph expert advised he "could test the truthfulness of [Petitioner's] answer to a question about whether he ever saw a live video image of an underage child" (Docket Entry 47-1 at 2), and (B) Petitioner's counsel "considered asking for a recess to allow . . . that polygraph examination" (<u>id.</u>), but (C) he "decided against it" (<u>id.</u>), because he "did not think Judge Osteen would have allowed it" (<u>id.</u>). (<u>See</u> Docket Entry 51 at 4 (referencing and quoting same).) In doing so, the First Reply objects to Petitioner's counsel "mak[ing such] a decision affecting [Petitioner's] case and most certainly the outcome and [] not discuss[ing] or consider[ing] [Petitioner's] wishes." (<u>Id.</u>) That objection falters for (at least) two reasons. First, "[t]he adversary process could not function effectively if every tactical decision required client approval." <u>Taylor v. Illinois</u>, 484 U.S. 400, 418 (1988); <u>see also id.</u> at 417-18 & n.24 (giving these examples of "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client": "right to plead not guilty and to have a trial," "right to a jury trial," and "right to be present during trial" (internal brackets omitted)); <u>Lopez-Merida</u>, 2014 WL 12785136, at *6 ("Counsel had wide latitude to make tactical decisions . . . [about] which arguments to advance at the sentencing hearing."). Second, contrary to Petitioner's supposition that the absence of a polygraph examination "'about whether he ever saw a live video image of an underage child'" (Docket Entry 51 at 4 (quoting Docket Entry 47-1 at 2)) "affect[ed his] case and most certainly the outcome" (<u>id.</u>), Petitioner's counsel rightfully recognized that – even if Judge Osteen had allowed a continuance for a polygraph examination on that point and even if the resulting data had corroborated Petitioner's claim on that point – that data "would not have conclusively addressed the truthfulness of [Petitioner's] testimony about with whom he believed he was chatting" (Docket Entry 47-1 at 3).

25

Based on the foregoing considerations, the Court should refuse relief on Ground Three.[13]

---

[13] Under the heading for Ground Three (see Docket Entry 51 at 7 ("Sub-Claim 3: Defense Counsel Should Have Used a Polygraph Examiner to Establish the Truth of Petitioner's Claim that he Believed he was Communicating with an Adult Pretending to be a Minor, not an Actual Minoe [sic]")), the First Reply veers away from Ground Three's actual ineffectiveness claim (for failing to seek a continuance to pursue additional polygraph examination) into a re-hashing of role-playing-related arguments fully aired at sentencing. (Compare, e.g., Docket Entry 39 at 18 ("This is all online activity. It's all role playing . . . ."), 30 ("[Petitioner's] conduct is pure role play. . . . As far as he knew, he was talking to a 45-year-old man . . . when he was speaking with the [putative minor]. . . . The chat back and forth is purely role play."), 36 ("This indeed was . . . all in my mind. I would never ever hurt another individual in any way . . . ."), 37 ("I never was talking to a child in my mind. . . . [T]he people I have chatted with are all adults, and they pretend to be other than what they are."), 38 ("I never used [Skype] for [video], just for chat. . . . [A]s far as the file transfer [in the chat with the putative minor], I have no idea what that file would be . . . ."), with, e.g., Docket Entry 51 at 4-5 ("The Government did not bring any evidence that the online conversation in question was with a person who was under the age of an adult. . . . [T]he Court assumed that [Petitioner] saw [the putative minor] on Skype and had received a video file from [her]. Both assumptions are patently false. . . . [Petitioner] would never have engaged a young person knowingly in a fantasy, role-play conversation. This website did not use video features of Skype . . . . The video function on this site was turned off . . . . [Petitioner] did not request [an image file of the putative minor] nor want one . . . . [Petitioner] knows this is an adult in a role. He is not looking for a picture of a young person." (emphasis and internal quotation marks omitted)), 7 (stating that Petitioner "wanted no interaction with any children" and "present[ed] a good faith defense of knowledge of age where this alleged minor [with whom he chatted] is concerned" (emphasis omitted)). On direct appeal, "[a]fter reviewing the presentence report and sentencing transcript, [the Fourth Circuit] conclude[d] that [Petitioner's] sentence [wa]s both procedurally and substantively reasonable." Caruthers, 706 F. App'x at 803; see also id. ("The district court . . . sufficiently explained its reasons for imposing the sentence [Petitioner] received."). "[Petitioner] cannot use a § 2255 motion to relitigate and rehash
(continued...)

26

<u>Ground Four</u>

According to Ground Four, "[Petitioner's] counsel's behavior was deficient when he failed to object to unconstitutional ex parte communication between the [C]ourt, the U.S. Probation Office, [and] the government, along with the court recorder [sic] held in judge's chambers." (Docket Entry 43 at 16 (stray hyphen omitted); <u>see also id.</u> ("Defense counsel was not included in this sentencing conference. . . . When an in c[h]ambers conference is held and the prosecution (the government) is represented, the defendant has a constitutional right to have representation as well. [Petitioner's counsel] was not included and was deficient in his duty when he made no objection. [Petitioner] has no idea what was discussed.").) The Response Motion correctly critiques Ground Four as "exceedingly vague." (Docket Entry 47 at 24; <u>see also id.</u> at 25 ("Petitioner does not articulate why he thinks such a meeting took place or whether he consulted [his counsel] about what was going on.").) The First Reply, in turn, concedes that "[t]he Government is correct in saying that this claim lacks specifics" (Docket Entry

---

<sup>13</sup>(...continued)
the same issue (i.e. [whether Judge Osteen properly sentenced Petitioner]) which was fully considered and decided by the [Fourth] Circuit on [Petitioner's] direct appeal." <u>Talley v. United States</u>, Nos. 1:94CR118, 1:00CV74, 2006 WL 3422997, at *21 (E.D. Tenn. Nov. 27, 2006) (unpublished); <u>see also</u> <u>United States v. Dyess</u>, 730 F.3d 354, 360 (4th Cir. 2013) ("[A petitioner] cannot circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." (internal ellipsis and quotation marks omitted)).

51 at 8), before making this startling (but entirely unsupported) allegation in an attempt to remedy that defect:

> On page 39, line 10 [of the sentencing hearing transcript], the [C]ourt announces a short recess, which ran from 11:27 am to 11:41 am. During that 14 minutes, <u>Mrs. Caruthers carefully observed</u> that the probation officer and [counsel for the United States] entered the judge's chambers. [Petitioner's counsel] was not included. There is no mention of the court reporter being a part of, and recording, their conversation.

(<u>Id.</u> (emphasis added) (referring to Docket Entry 39 at 39).)

Despite prior notice to Petitioner that (A) he could oppose the Response Motion with "counter affidavits or . . . other responsive material" (Docket Entry 48 at 1), (B) "failure . . ., if appropriate, to file counter affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the [Response Motion's] contentions are undisputed" (<u>id.</u>; <u>see also</u> <u>id.</u> ("As a result, the [C]ourt may dismiss your suit or render judgment against you.")), and (C) "affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify" (<u>id.</u>), Petitioner did not tender an affidavit (or include a verification) from Mrs. Caruthers along with the First Reply (<u>see</u> Docket Entry 51 at 1-10). That failure reduces Ground Four to nothing more than "[u]nsupported, conclusory allegations [which] do not warrant an evidentiary hearing, much less [habeas] relief," <u>Ward</u>, 2016 WL 1032847, at *4. Petitioner's presentation of an entirely unsupported (and therefore frivolous) allegation of improper communication between the Court and counsel

28

for the United States (as well as unprofessional tolerance thereof by Petitioner's counsel) clearly falls beyond the bounds of lawful litigation.  See generally Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 398 (1990) ("[A b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.").

Regrettably, the Second Reply makes things much worse, as it not only abandons (sub silentio) the First Reply's hearsay assertion that Mrs. Caruthers saw counsel for the United States enter Judge Osteen's chambers with a Probation Officer (and without Petitioner's counsel), but also alleges (in unsworn fashion) that, "[a]s regards [Ground Four's] claim that there was an ex parte meeting that excluded [Petitioner] and [his] counsel, this was information given to [Petitioner] during a post-hearing meeting with [Petitioner's counsel] . . . .  [Petitioner] based his argument on false information supplied by [his] counsel . . . ." (Docket Entry 53 at 4; see also id. at 4-5 ("Considering the [R]esponse [Motion] and [Petitioner's] memory of the events, it appears [Petitioner's] counsel was creating a false issue to explain away [his] own incompetence. . . .  The Honorable Court's actions were correct with no prejudice to [Petitioner].").)  In other words, after declaring under penalty of perjury that his wife "carefully observed that the probation officer and [counsel for the United States] entered the judge's chambers" (Docket Entry 51 at 8;

29

<u>see also</u> <u>id.</u> at 10 (verifying, pursuant to 28 U.S.C. § 1746, "that the factual allegations and factual statements contained in this doscument [sic] are true and correct to the best of [Petitioner's] knowledge")), Petitioner pretended he had not made a sworn attribution of that (now-abandoned) allegation of judicial and prosecutorial misconduct <u>to his wife</u> and instead implausibly charged that his counsel "supplied" that "false information" (Docket Entry 53 at 4).[14]

This sequence of filings leads inexorably to the conclusion that the Court should dismiss Ground Four (and any even tangentially-connected allegation of impropriety against Petitioner's counsel) as "wholly incredible," <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992), and thus "factually frivolous," <u>id.</u>; <u>see also</u> <u>United States v. Butt</u>, 731 F.2d 75, 77 (1st Cir. 1984) ("A § 2255 motion which is facially inadequate may be summarily denied, i.e., [courts may deny claims] stating . . . contentions which are wholly incredible . . . ." (internal quotation marks omitted)); <u>Almonte v. United States</u>, No. 91Civ.6044, 1992 WL 84942, at *1

---

[14] The Second Reply also shamelessly tries to convert Petitioner's (unacknowledged and unconvincing) shifting of blame for Ground Four's false allegations of ex parte contact between the Court and counsel for the United States from Petitioner and his wife to his counsel into "[f]urther evidence of blatant ineffective assistance" (Docket Entry 53 at 5; <u>see also</u> <u>id.</u> ("[T]he false allegation of improper conduct by the Court demonstrate[s] a complete absents [sic] of counsel.")). "This transparent gambit does not deserve comment." <u>In re Charles Schwab & Co. Sec. Litig.</u>, 69 F. Supp. 2d 734, 737 n.4 (D.V.I. 1999).

(S.D.N.Y. Apr. 10, 1992) (unpublished) (dismissing as "frivolous" Section 2255 claims based on "wholly fanciful" allegations). Dismissal alone, however, may not adequately address Petitioner's transgressions in relation to Ground Four.

"Federal courts . . . forbid [both] ex parte contacts and false accusations that bring the judicial system into disrepute." Matter of Palmisano, 70 F.3d 483, 487 (7th Cir. 1995). The prohibition of the former "is a high priority in order to promote a justified public confidence in the judicial system. Indiscriminate accusations of dishonesty, by contrast, do not help cleanse the judicial system of miscreants yet do impair its functioning . . . ." Id. Nor does the nature of this action excuse Petitioner's malfeasance: "A petition for writ of habeas corpus is not a game the law affords incarcerated people." Williams v. Lockhart, 862 F.2d 155, 161 (8th Cir. 1988) (Lay, J., concurring); see also United States v. Paglia, 190 F.2d 445, 447-48 (2d Cir. 1951) ("Justice is not a game; there is no constitutional right to throw dust in a juryman's eyes, or hoodwink a judge who is not overwise." (internal quotation marks omitted)).

Plainly stated, Petitioner's litigation of Ground Four amounts to a gross abuse of the legal system, warranting not only dismissal, but also consideration of sanctions. See generally Harrelson v. United States, 967 F. Supp. 909, 916 (W.D. Tex. 1997) (concluding that sanctions provision of Federal Rule of Civil

31

Procedure 11 does not apply to actions under Section 2255, but that "[c]ourt retain[ed] the inherent authority to police its own docket and, if necessary, to sanction . . . parties who file pleadings, affidavits, or other documents in th[e c]ourt in bad faith or without having made a bona fide, good faith, effort to determine the accuracy of factual statements contained therein").

## GROUND FIVE

The Section 2255 Motion's fifth (and final) ground for relief states:

> [Petitioner] was for all intents and purposes without counsel during the [presentence investigation] phase of the sentencing stage of the proceedings. [Petitioner's] counsel [] did not challenge calculations in the [presentence report] in writing that were questionable or possibly, and sometimes likely[,] without merit.

> And, even though it would have come later in the proceedings, he could have researched some of the assumptions in the [presentence report] and given his objections at the sentencing hearing. He did not.

(Docket Entry 43 at 17.)

In terms of specifics, Ground Five mentions only one item in the presentence report Petitioner's counsel should have contested:

> The number of images counted by [TFO] Norman was given as 1,007. [TFO] Norman used the word "files." Files are containers that contain images. This was not challenged as to deleted images or duplicate images. [Petitioner] asserts that there were between 50 and 75 files or folders existing on his devices at the time of his arrest. There would have been many duplicates among these that should not have been counted. The issue of temp/shadow files needs addressing.

> In addition, there were images on both a cell phone and a computer device. Counting images on both devices, just

32

> as counting multiple copies of the same image or folders is a violation of the Double Jeopardy Clause.
>
> [Petitioner's] counsel either knew or (more likely) should have known that this double counting should not go unchallenged. He failed to recognize this and it raised [Petitioner's offense level] score by a significant amount, causing a much longer sentencing range than appropriate for this offense.

(Id.; see also id. ("[Petitioner's presentence report] needs to be re-scored after the matters mentioned above have been subject to appropriate re-counting and the method subjected to adversarial testing as provided for by statute.").)  For two independent reasons, that argument cannot support relief.

By way of background, as Petitioner's counsel has observed, "[Petitioner's o]ffense [l]evel was enhanced 5 levels because the offense involved more than 600 images.  The [presentence report] held [him] responsible for 2,339 images." (Docket Entry 47-1 at 3 (internal citation omitted) (citing Docket Entry 27, ¶ 41); see also Docket Entry 47 at 26 ("United States Sentencing Guidelines section 2G2.2(b)(7) requires that a defendant's offense level be increased by varying degrees based upon the number of child pornography images the offense involved.  The maximum applicable increase is five levels for 600 or more images." (internal footnote omitted) (citing U.S.S.G. § 2G2.2(b)(7) (2016))).)  The Response Motion convincingly counters Ground Five's allegation that Petitioner's counsel should have challenged that finding in the presentence report as follows: "Petitioner's allegation assumes

33

that files depicting the same content as files already counted (i.e. duplicate files) should not be counted when calculating the total images that the offense involved. Petitioner's assumption is incorrect. The Fourth Circuit considered this very argument . . . and held that 'any image without regard to its originality should be counted.'" (Docket Entry 47 at 26-27 (internal citation and footnote omitted) (quoting <u>United States v. Price</u>, 711 F.3d 455, 459 (4th Cir. 2013)).)[15]

In any event, Ground Five cannot succeed, even if Section 2G2.2(b)(7) excludes duplicate images of child pornography, because Petitioner's counsel has averred that "[he] did not identify any double counting issues which would have significantly reduced the

---

[15] The plain language of <u>Price</u> does not support Petitioner's attempt to distinguish that case as only "stat[ing] that duplicates should be counted for <u>distribution</u> of [child] pornography" (Docket Entry 51 at 9 (emphasis in original). <u>See</u> <u>Price</u>, 711 F.3d at 456-57 ("[The defendant] argues that duplicate images should not be counted when applying the Section 2G2.2(b)(7) sentencing enhancement. . . . [W]e reject [his] argument[] and affirm his sentence."); <u>see also</u> <u>id.</u> at 456 (documenting that "[the defendant] pled guilty to accessing the internet via computer with the intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)," not distribution offense), 458-59 ("[The defendant] would have us read Section 2G2.2(b)(7) as only allowing unique images to be counted when applying this enhancement. This argument has no basis in the language of Section 2G2.2(b)(7). Quite contrary to [that] assertion, [the applicable commentary] suggests that when applying the number of images enhancement, each and every depiction of child pornography without regard to originality must be counted. We reject any uniqueness requirement that [the defendant] tries to read into Section 2G2.2(b)(7) and hold that any image without regard to its originality should be counted when applying this enhancement so long as that image depicts child pornography and is relevant to the underlying conviction.").

quantity of images" (Docket Entry 47-1 at 3) and the record (viewed
in light of the language of the Guidelines) supports that
determination. For example, as the Response Motion notes,
(A) "'each video, video-clip, movie, or similar visual depiction
shall be considered to have 75 images'" (Docket Entry 47 at 26
(internal brackets omitted) (quoting U.S.S.G. § 2G2.2, cmt.
(n.6(B)) (2016))), and (B) "the presentence report alone lists six
unique video files" (id. at 27 n.5 (citing Docket Entry 27, ¶ 17)).
The presentence report further documents "989 still images" (Docket
Entry 27, ¶ 20), of which the First Reply reports "at least 60% and
possibly as many as 80% . . . were duplicates" (Docket Entry 51 at
9). Combining the 450 images attributable to the six unique videos
described in the presentence report (6 x 75) with the 198 (20% of
989) to 396 (40% of 989) of non-duplicate, still images conceded by
Petitioner results in a figure of 648 to 846 total (unique) images,
well above the 600-image threshold for the five-level increase
under Section 2G2.2(b)(7). Accordingly, "[Petitioner's] counsel
was not constitutionally ineffective in failing to object [to that
guideline calculation] . . . because it would have been futile for
[him] to have done so," Oken, 220 F.3d at 269.

On either of the alternative bases outlined above, Ground Five
fails as a matter of law.[16]

_____

[16] To the extent Ground Five complains generally about the
handling by Petitioner's counsel of any other (unspecified) items
(continued...)

35

CONCLUSION

Petitioner has established no entitlement to collateral relief and has made frivolous filings which abuse the judicial process.

**IT IS THEREFORE RECOMMENDED** that the Response Motion (Docket Entry 47) be granted in part, in that the Section 2255 Motion (Docket Entry 43) should be denied on the merits as to Grounds One, Two, Three, and Five and should be dismissed as frivolous as to Ground Four, all without issuance of a certificate of appealability.

**IT IS FURTHER RECOMMENDED** that the Court consider sanctioning Petitioner for his bad-faith litigation of Ground Four.

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge

July 12, 2022

---

[16](...continued)
in the presentence report (either prior to or during the sentencing hearing), "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis," Cano, 2009 WL 3526564, at *3. (See Docket Entry 43 at 17; see also Docket Entry 51 at 9 (re-labeling Ground Five as "Counsel Should Have Challenged the Child Pornography Image Count Calculation in the Pre-Sentence Report" and discussing only that lone guideline issue); Docket Entry 53 at 1-10 (making no argument about objections to presentence report).)

36